## S. T. BODKINS V. THE STATE.

### No. 3254. Decided December 2, 1914.

### Rehearing denied January 6, 1915.

**1.—Recognizance—Reinstatement.**

Where the recognizance was defective in not concluding with the words "in this State" and the appeal dismissed, but a sufficient recognizance was thereafter filed, the appeal is reinstated.

**2.—Same—Adultery—Limitation—Evidence—Other Acts of Intercourse.**

Where, upon trial of adultery, the evidence showed that the acts of sexual intercourse were begun by the defendant while prosecutrix was only fourteen

years old and continued for two years, there was no error in admitting evidence to this effect, the court limiting the jury to the acts which occurred within the period of limitation.

### 3.—Same—Evidence—Cross-examination.

Upon trial of adultery, there was no error in permitting prosecutrix to testify that she had never had intercourse with any other man than defendant; owing to the cross-examination of defendant.

### 4.—Same—Evidence—Birth of Child—Other Circumstances.

Upon trial of adultery, there was no error in permitting prosecuting witness to testify that she gave birth to a baby while in the home for fallen women and to testify why she left home, in connection with the other testimony.

### 5.—Same—Evidence—Cross-examination.

Where, upon trial of adultery, defendant denied that he had ever had sexual intercourse with prosecutrix, and introduced testimony tending to reflect on her good name, there was no error to ask him on cross-examination if he knew of any reason why the girl should testify falsely against him, to which he answered that he did not.

### 6.—Same—Argument of Counsel.

Where, upon trial of adultery, the testimony showed that the acts of sexual intercourse between the parties began when prosecutrix was only fourteen years of age, and that the first intimation the officers had was when the prosecutrix was passed sixteen years of age, there was no error in permitting the county attorney, in his argument, to say that if the statutes of limitation had not run against the offense of rape, that the defendant would have been prosecuted for rape instead of adultery, as this was a legitimate comment on the evidence.

### 7.—Same—Objections to Charge of Court—Surplusage.

Where the bill of exceptions did not show that the objections to the charge of the court were made before the same were read to the jury, the same need not be considered on appeal; however, the court's charge required the jury to find that the defendant was married to another person at the time he was charged with adultery, and it was not necessary to require him to find that he was married to a certain woman, naming her; besides, the evidence showed such facts as alleged in the indictment.

### 8.—Same—Charge of Court—Living Together—Definition of Offense.

It is not necessary in the offense of adultery that the parties should live together as man and wife; it is only necessary that they live together and have sexual intercourse. Following Shaw v. State, 49 Texas Crim. Rep., 379, and other cases.

### 9.—Same—Charge of Court.

Where, upon trial of adultery, the evidence sustained the conviction, there was no error in refusing a peremptory charge to acquit the defendant.

### 10.—Same—Sufficiency of the Evidence—Corroboration.

Where, upon trial of adultery, the evidence was sufficient to corroborate the testimony of the prosecutrix to the extent required by law, and in addition the defendant confessed practically that he had committed the offense, the conviction was sustained under a proper charge of the court.

Appeal from the County Court of Tarrant. Tried below before the Hon. T. W. Simmons.

Appeal from a conviction of adultery; penalty, a fine of $1000.

The opinion states the case.

*Poulter & Johnson,* for appellant.—On question of argument of counsel: Davis v. State, 54 Texas Crim. Rep., 236, 114 S. W. Rep., 366; Hemphill v. State, 165 S. W. Rep., 446; Daniels v. State, 160 S. W. Rep., 707.

On question of accomplice: Wright v. State, 47 Texas Crim. Rep., 433, 84 S. W. Rep., 593; Powell v. State, 50 Texas Crim. Rep., 592, 99 S. W. Rep., 1005; Chambers v. State, 44 S. W. Rep., 495; Welden v. State, 10 Texas Crim. App., 400; Dunn v. State, 15 id., 560; Tisdale v. State, 17 id., 444.

On question of admitting testimony of birth of child as no corroboration of accomplice testimony: Nolen v. State, 60 Texas Crim. Rep., 5, 129 S. W. Rep., 1108.

On question of living together in adultery: Boswell v. State, 48 Texas Crim. Rep., 47, 85 S. W. Rep., 1076; Randell v. State, 12 Texas Crim. App., 250; Lynch v. State, 24 id., 350; Murphy v. State, 36 Texas Crim. Rep., 34.

On question of alleging name of wife requiring proof thereof: Butts v. State, 47 Texas Crim. Rep., 494, 84 S. W. Rep., 586; Robinson v. State, 60 Texas Crim. Rep., 353, 132 S. W. Rep., 944; Tucker v. State, 59 Texas Crim. Rep., 291, 128 S. W. Rep., 617; Poston v. State, 58 Texas Crim. Rep., 583, 126 S. W. Rep., 1148; McAlister v. State, 58 Texas Crim. Rep., 188, 116 S. W. Rep., 582.

On question of other acts of sexual intercourse and limitation: Duncan v. State, 40 Texas Crim. Rep., 591, 45 S. W. Rep., 921.

*C. E. Lane,* Assistant Attorney General, for the State.

DAVIDSON, JUDGE.—The Assistant Attorney General moves to dismiss this appeal because of the insufficiency of the recognizance. We find that his motion is well taken. It does not comply with that part of the statute which requires the form of the recognizance to conclude with the words "in this case." Quite a number of cases have been dismissed upon this omission in the recognizance, and following those cases the motion will be granted and the appeal dismissed.

*Dismissed.*

ON REHEARING.

January 6, 1915.

HARPER, JUDGE.—This case was dismissed on account of insufficient recognizance, but appellant has filed a sufficient recognizance and the case is now reinstated.

Appellant was convicted of adultery and his punishment assessed at a fine of one thousand dollars—the maximum punishment authorized by law.

The prosecuting witness is named Annie Lee Heather. Appellant married her aunt, and when Annie Lee's father and mother died, Annie Lee went to live with appellant and his wife, she then being only eight years old. Appellant cared for her, sent her to school, and she continued

to reside with appellant and his wife for about eight years, when appellant's wife died. Annie Lee was pregnant at the date of the death of her aunt, and shortly thereafter left appellant's home and went to the Virginia Kate Johnson Home at Dallas, a home for fallen girls, where she gave birth to a baby on the 14th day of last March. She testified appellant began to have intercourse with her when she was fourteen years old, and continued to do so for about two years, the last act of intercourse taking place in June of last year; that she could not say how often he had intercourse with her during the two years, but it occurred on an average of about twice a month. The indictment in this case was returned February 13, 1914, and appellant objected to the witness being allowed to testify that the acts of intercourse had been going on for two years prior to June, 1913, as a portion of such acts would be barred—that is, all acts that occurred prior to two years before the return of the indictment. As the girl by her testimony would show that the acts were begun while she was only fourteen years old and continued for two years up to June 13, 1913, there was no error in admitting the testimony. Of course he could not be convicted of any offense that occurred more than two years prior to the filing of the indictment, and the court in his charge so informed the jury, but when the witness had testified to a course of conduct within the period of limitation that would authorize a conviction, there would be no error in permitting her to state how long such course of conduct had continued. He also objected to her being permitted to testify that she had never had intercourse with any other man. Owing to the cross-examination of appellant, this testimony became material and admissible.

It further appears that when the county attorney's office learned of the condition of the girl, the county attorney had her summoned to appear before him; that this was in February, and after this she did not live at appellant's house any longer, and that she then went to the Virginia Johnson Home in Dallas—a home for fallen girls, and while there had given birth to a baby. Appellant objected to this testimony, claiming that it would be prejudicial to him. Certainly it was permissible for the girl to say when she left appellant's home, and it was not error to permit her to say where she was staying, and it was perfectly permissible in a case of this character for her to state that she had given birth to a baby. (Snodgrass v. State, 36 Texas Crim. Rep., 207.) The court, at the time he admitted the testimony, stated he would admit it on the issue of whether or not she had had intercourse with someone, and limit it to that purpose alone. The fact that the prosecuting witness was an inmate of the home for fallen women and had there given birth to a baby, would not tend to prove whether or not appellant had been guilty of adultery with this girl, and if the remainder of the testimony convinced the jury beyond a reasonable doubt that he was guilty of adultery with her, the fact that these circumstances might cause them to assess a heavier punishment would not render them inadmissible, for if appellant was guilty of adultery as charged, it was his acts which brought about the condition.

Appellant testified in his own behalf and admitted that the girl had been an inmate of his home ever since she was eight years old (some eight years), but denied emphatically that he had ever had an act of intercourse with her. He introduced testimony tending to reflect on the girl's good name, and while he was testifying he was asked if he knew of any reason why the girl would come here and testify falsely against him, and he answered that he did not. If he had known any reason it would have been admissible as tending to show the motive of the girl, and as he, by the testimony introduced by him, attempted to so severely assail her, there was no error in permitting the question to be asked.

The girl's testimony, if true, showed that appellant had begun to have intercourse with her when she was fourteen years of age, and had continued until about the time she was sixteen years old. Appellant. complains that the county attorney in addressing the jury said: "It may seem surprising to you that this defendant is not prosecuted for rape, a felony,—he might have been prosecuted for rape instead of adultery if limitation had not run against the rape case; in fact, he should have been prosecuted for rape, for the evidence in this case makes out a case of rape, and it is lucky for him that his crime was not detected before the felony case was barred by limitation; and under these circumstances any fine or even a jail sentence is too light for this defendant, and if the county attorney's office had known about it sooner he would have gone to the penitentiary." The bill shows these remarks were objected to and the court orally requested to instruct the jury not to consider them, but no written instruction in regard thereto was prepared and submitted to the court. Appellant earnestly insists this is error, and such error that it should result in a reversal of the case, even though he asked no written instructions in regard thereto, and cites us to the case of Smith v. State, 44 Texas Crim. Rep., 137, 68 S. W. Rep., 995, and other cases, wherein it is held: "The rule has been laid down that in cases of this character, in the discussion of the case, counsel could not be too careful not to travel out of the record, and especially should he scrupulously avoid any improper or unfair means to secure a conviction." This rule of law we heartily endorse and would reiterate, but did counsel in this case by the use of these remarks "travel outside of the record"? The girl's testimony shows that the acts of intercourse began when she was only fourteen years of age; if her testimony was true, this would constitute rape, and the remarks of the county attorney in so stating were within the record. Also the testimony shows that the first intimation the officers had was in February, 1913, when the girl was past sixteen years of age, and as the law prescribes that a prosecution for rape must be brought within a year, and if an act of intercourse had occurred within a year prior thereto, she was more than fifteen years old at the time, consequently a prosecution for rape was barred, and shown to be barred by the testimony on this trial. So the county attorney was merely commenting on the testimony introduced on the trial, and if appellant had prepared a special charge and pre-

sented it, there would have been no error in refusing it; but especially does the bill present no error as he did not prepare and present any special charge in regard thereto.

·There is a bill in the record complaining of the court's charge in two respects, but the bill shows that it was *after the charge* had been read to the jury before any objection was made thereto, and we might for this reason refuse to consider such objections. One of the objections is, that as the indictment alleged that appellant at the time of his alleged acts of intercourse with the girl, Annie Lee Heather, he was married to another person, towit: Lillian Bodkins, the court's charge was erroneous in that it only required the jury to find that appellant was married to another person, and did not go further and require them to find that he was married to Lillian Bodkins. As there was no question raised as to this matter on the trial, and the proof conclusively shows that appellant married the aunt of the prosecutrix in 1900, and continuously lived with her until her death, this would present no error. If there had been any question raised by the evidence that the woman alleged was not the wife of appellant, a more serious question might be presented. However, it has been held by this court that the allegation of the name of the woman to whom the appellant is married is wholly unnecessary to be stated in the indictment, and if stated may be treated as surplusage, and, therefore, not necessary to be proven. This identical question was presented in the case of Collum v. State, 10 Texas Crim. App., 712, and the court held: "In our opinion it would be sufficient to allege in the indictment the lawful marriage to some other person, as set out in the statute, and law only demands that proof be made that the party was lawfully married to some other person than the one with whom the adultery is charged, and it is not incumbent on the prosecution to either allege or prove the name of the other person to whom one of the parties was lawfully married. We therefore conclude that the question raised on the subject of the testimony of the name of this other person was wholly unimportant and immaterial, and an unnecessary consumption of time; this portion of the indictment, not being necessary to the description of the offense, might properly be treated as surplusage." Besides this, the testimony of Mrs. Mahoney shows that appellant's wife was named Lillian Bodkins.

The only other complaint is that the court erred in submitting the first count in the indictment wherein it charged a "living together." These words have been defined by this court in the case of Bird v. State, 27 Texas Crim. App., 635:

"In the case before us, the defendant stands convicted of adultery, committed in the first mode named on article 333, by *living together* with one Ida ·Smith, and having carnal intercourse with her. To support such conviction it was essential that the State should prove not only that the parties had carnal intercourse with each other, but also that they *lived together*. A 'living together' is not defined by the code. These words are, therefore, 'to be taken and construed in the sense in which they are understood in common language, taking into consider-

ation the context and subject matter relative to which they are employed.' (Penal Code, art. 10.) Guided by this rule of construction we are of the opinion that the term, 'living together,' as used in articles 333 and 337 of the Penal Code, means that the parties must dwell or reside together,—abide together in the same habitation as a common or joint residing place. This interpretation of the term is more restricted than has been given to it in decisions made under the former statutes. (Swancoat v. State, 4 Texas Crim. App., 105; Parks v. State, id., 134.)"

This ruling has been approved in Burnett v. State, 44 Texas Crim. Rep., 226, and other cases. Appellant's contention seems to be that they must have been living together as man and wife to constitute a "living together" as used in the code. This has been decided adversely to his contention in the case of Shaw v. State, 49 Texas Crim. Rep., 379, wherein it was held: "The charge is that appellant and Coons were committing adultery 'by living together.' A special charge was requested to the effect that in order to constitute this offense as charged 'the parties must live together as man and wife,' which was refused by the court. It is not necessary that the parties should 'live together as man and wife' in order to constitute adultery under this phase of the statute. Bird v. State, 27 Texas Crim. App., 635; Massey v. State, 3 Texas Ct. Rep., 598. It is only necessary that they live together and have intercourse; it need not be such a living together as man and wife."

The only charge requested and not given was a request for peremptory instructions, and the court did not err in refusing it.

The only other complaint is that while the testimony of Annie Lee Heather might make a case, that she being an accomplice in law her testimony must be corroborated. The court so instructed the jury, giving appellant's special charge on this issue, and we think the evidence is sufficient to corroborate her testimony to the extent required by law. In addition to other facts and circumstances in evidence, Carl D. Heather testified: "I had a conversation with this defendant with reference to this matter; the exact time I do not remember, but it was in Dallas on Sunday. He met me and paid my way over there, and I came and he met me there. He tried to get me to make my sister make a statement that she had made a false statement against him to the county attorney and one to his lawyers, and he said he would give me something like two or three hundred dollars in her behalf, and would contribute twenty-five or fifty dollars a month and support her; that he knew he had done wrong and wanted to show me that he was a man, and said that he would meet her in Waxahachie later and marry her, and take her and take care of her if I said so."

The judgment is affirmed.

*Affirmed.*

[Rehearing denied January 6, 1915.—Reporter.]